Good morning, Your Honors, and may it please the Court, Adrian Bacon, Court Appellants. At summary judgment, a court must view the evidence in the light most favorable to the non-moving party and draw all inferences in their favor under relevant substantive law. A court must also only enter judgment on those claims over which it had jurisdiction. The District Court failed on all fronts here, resulting in a very important vehicle safety class action, which was total dismissal on the eve of class certification. As to Guzman, the District Court ignored numerous pieces of evidence that were favorable to Guzman, selectively applying only the worst evidence against him, in the light most favorable to Polaris. It ignored a declaration, which is part of the summary judgment record, and for which was block cited to the board. Well, let's talk about that. The declaration seems to be unambiguously in conflict with his testimony during the deposition. Why can't we now find or remand the case to the District Court to determine whether or not that is a sham affidavit? First and foremost, I don't agree with the premise of your statement. I think that the declaration is consistent with Mr. Guzman's testimony at his deposition, if you look at portions of his testimony that are viewed in his favor with inferences drawing in Mr. Guzman's favor. However, even assuming arguendo that it were in conflict, the sham affidavit doctrine has to be subject to an objection at the District Court level, and it was not, except for a oral argument by defense counsel. But is an oral argument the only time that you mentioned it? How would they have raised it earlier as an objection when you didn't put it in your brief? It was attached to John Christensen's declaration in support of our opposition brief, and it was also extensively discussed in our class certification papers, which were contemporaneously filed and to be heard on the same day by the District Court. So it was before the court in several respects. Was the class action issue argued the same day? It was not because the court vacated that hearing and decided a few days before to only hear the summary judgment issue. Why should your opposing counsel have necessarily noticed this material if it wasn't something you were relying on in your summary judgment briefing that was the only thing actually being argued? Maybe they were going to prepare for their argument on class action the next day, and they never had to. That's possible, but the briefing occurred before that, and it was attached to the summary judgment opposition papers. There was not a specific citation to it. You are correct about that, Your Honor, in the brief itself, but it was attached to the materials, and it was discussed at oral argument by both sides. An objection was made by counsel. The District Court ordered that all objections were overruled in its order, and so I think that was properly before the court. Even so, there's other testimony from Mr. Guzman in his deposition, which, when viewed in the light most favorable to him, should have resulted in a jury trial, not a verdict, including testimony where he said that he understood that the label was conveying important safety information about the cage. But does that make any difference what he understood? The question is, did he see it? Did he read it? Now, what was in his mind? Isn't that the issue? He did see it, and he did read it. He testified that he saw it. He testified numerously that he saw it. Well, he said in his deposition, did you actually read the sticker? No. I just saw what it said OSHA on it. Now, that's pretty clear, isn't it? Well, yes and no. If you look at the full totality of his testimony, what he says is that he understood that it meant OSHA approved. He's a construction worker. He knows that OSHA stickers mean that there's a conveyance of a federal safety mandate that's satisfied. And when you look at a sticker like that and you already know what that sticker is supposed to convey, it doesn't matter what the full thing says. That being said, he did testify in numerous instances in his deposition that he knew that that meant that the cage was safe. And I can point to a bunch of examples of it. He says that the vehicle didn't meet his expectations because, this is an excerpt of record 1796, because it's not strong enough or if it would flip over or anything like that for any reason. And he also said that he wouldn't have purchased it if it didn't have that sticker on it. Now, the issue with respect to reliance is whether there is a causal mechanism for fraud. That's the standard. Basically just means that if but for the misrepresentation, would the consumer have acted differently? And would that difference of behavior have precluded harm from occurring? He satisfies that standard, even under OSHA. If he only read OSHA though, then how do we interpret the statement that has to be false? Do you need to show that nothing in the entire vehicle complied with an OSHA standard? Well, we can't show that because there is no other application of the OSHA standard in this vehicle. So the only thing that OSHA applies to in the whole vehicle is the roll cage. And the OSHA sticker was on the roll cage. And Mr. Guzman's testimony strongly suggests that he understood that the roll cage was the part that the sticker related to. Now, he did say at one point that it related to the whole vehicle. We think this is a semantical distinction because the only part of the vehicle that OSHA relates to is the roll bar. It's the only part of the vehicle that is implicated by that language. And he did understand that. That might get out of the problem, but just for thinking about what a consumer needs to read. I mean, if the steering wheel was OSHA compliant, would you lose? It depends on how finely you dice his testimony. I think in this case we would not because Mr. Guzman did demonstrate at his deposition an understanding that the statement related to the roll cage. And he did say that numerously. So the falsity of the statement depends then not on the statement itself, but on the understanding of the consumer of what the statement means. So that seems a pretty flexible rule. Well, it is a flexible rule under California precedent from the California Supreme Court. Which case would you rely on for that? Well, there's the Kwikset case, and the Kwikset case is the case that talks about reliance that says that it has to be the causal mechanism of fraud. Okay. And you've also got the Tobacco II decision, which is California Supreme Court. And then you also have the Daniels decision out of this court. But the important part of it is that, and you can look at the, there's a case that defense counsel cited with Dr. Pepper that this court decided that goes against our view of the law built with distinguishable facts. The important thing is that the consumer saw the misrepresentation, had an understanding of what it was trying to convey, and acted detrimentally as a result of that. Those elements are met here with Mr. Guzman, even under Polaris' reading of the facts. And those facts can be read in two ways. A more favorable reading of Guzman's facts would view him as a family man who was buying this vehicle because he thought that it was going to be safe for his family to drive in. He saw an OSHA sticker on it. He knew that that had to do with safety. He knew that that safety included the roll cage because he said so at his deposition. And he bought it, and he can't afford to get a stronger roll cage because it's too expensive. So now he drives the vehicle more slowly and more safely, and he's a little nervous about it. That's the view of the evidence that the court should have looked at as the light most favorable to Mr. Guzman. It's right there in his deposition. You don't even have to get to the declaration to do it. Now, the declaration should come in because, again, the sham affidavit doctrine can't be applied retroactively by this court. It has to be looked at by the district court subject to an objection, which it was subject to, and which the court did not rule on. So that should have also come in. But even if it doesn't, you've still got favorable evidence for Mr. Guzman. Now, turning to Mr. Albright's claims, we have the Cortez decision by the California Supreme Court. It states unequivocally that the district court's dismissal with prejudice of Albright's claims was in error on a substantive interpretation of the California's UCL. And the reason for this is because his claim was brought within the four-year statute of limitations period, and the California Supreme Court has held even where other remedies exist under substantive California state law, the UCL's language is clear. It must be given its plain meaning. It says any action under the UCL is subject to a four-year statute of limitations under 17-208. Any action. Say he brought the action within two years. Would he be able to pursue the UCL? Because at that point, he still would have had the other claim that was the legal remedy. So I think this is a very interesting question that we don't have to answer on this appeal, but I'll give you my thoughts on it. It depends. And what it depends on is whether the CLRA's legal standards deviate materially from the UCL's legal standards at the point where judgment is being considered. But I understand, at least for purposes of this case, that you're treating them as equivalent. I thought that's what your footnote 25 was saying. We are. We are. But your hypothetical envisions a different case. So under this case, we are treating them the same for that purpose. And so at that point, let's just stick with that for a moment. If you've got two statutes that are the same except for one's legal, one's equitable, and you're within the statute of limitations for both, do you concede that you can't pursue the equitable one in federal court? No. I think you can because there's no adequate remedy at law. And the UCL, under the Cortez decision. Wait, even if you're only two years and if you're within the statute of limitations for both? Oh, okay. Sorry, I misunderstood. Yes, I would say probably, but only in the fact pattern as you described it in this case, assuming our footnote. In another case, for instance, let's say you had to prove a science or requirement under the CLRA. This issue is not subject to this appeal. We can reserve the right to argue this later at trial, but this is not why we're on appeal right now. But let's say that under the CLRA's science or requirement, which requires an intent to commit fraud, you don't have to prove that under the UCL. So let's say we get to trial and we fail on that element under the CLRA, but we meet every other element. The UCL claim would prevail at trial, and the CLRA claim would not be an adequate remedy at law because it has a narrower relief with different legal requirements that are at issue, and they're materially at issue. These types of situations come up all the time. We're in an odd place with the way you've argued this case because you've said we should treat them the same. But that would mean that the equitable claim was gone for a while because if you'd brought the claim earlier, it would be gone, but somehow it gets revived because you were slow. And I don't understand how something in the law would work that way. Well, it has to because you have a Supreme Court case that says that that's how the UCL works, and the equitable jurisdiction doctrine merely looks at the limitations of what federal courts are allowed to decide, and it looks to state law principles in order to do that. Then look at the York case, which says- But this gets to, I think, your other argument about the with prejudice, without prejudice. I mean, maybe you can make this argument in state court, but we have this limit in federal court that I just am having trouble seeing how your framework is going to fit. It's weird for a claim to come back to life. It is weird, but there's a couple things I want to note. In York, the Supreme Court said Congress never gave, nor did the federal courts ever claim, the power to deny substantive rights created by state law or to create substantive rights denied by state law. The court did that here. And if you look at the precedent that the court used from the Ninth Circuit in order to do that, it relied on the Elias case. But Elias merely held that equitable relief cannot be manufactured by a federal court to circumvent statutory protections. Elias did not hold that equitable jurisdiction doctrine can be used to deprive a plaintiff of a statutory right. And the reason Elias doesn't apply here is because the plaintiff was requesting equitable relief in that case under Federal Rule 41. That is not a statutory right. The plaintiff did so in an effort to circumvent substantive legal procedures set forth under the administrative proceedings because he failed to meet those standards. And the court held that federal equitable procedure couldn't bail him out. We don't have that situation here. So the Elias case isn't applicable. And dissimilarly, what we've got here is a situation where a substantive statutory right was created by California's legislature, and the California Supreme Court held there's an absolute statutory right under the UCL to a four-year limitations period, and the adequate remedy of law doctrine cannot be used to preclude such remedies from an aggrieved party. Yet, Polaris, what they're asking this court to do is uphold a ruling by the District Court where Albright was nonetheless sort of deprived prejudicially on equitable jurisdiction grounds. Are you asking, what about Sonner? Are you basically asking us to just say Sonner is wrong? No. No, Sonner's not wrong. Sonner is absolutely not wrong. Sonner is a very limited case. In Sonner, they conceded for purposes of appeal that there was an adequate remedy of law. We don't. You did too in your footnotes, just not from the top. The only distinction you're drawing by is the statute of limitations. But that's an important distinction. It's a very important distinction because the statute of limitations is an affirmative factual defense that's raised by the defense. It's no different than if the damages were different or if there's a different remedy available for a different fact pattern under a different law or a different legal standard or any number of reasons why Sonner could be distinguished from many cases. But Sonner is limited to its facts because Sonner, all Sonner says is that the federal court lacks jurisdiction under equitable doctrines to decide cases in equity when a perfect remedy already exists at law under another statute. And we don't have that here. So it's a very important distinction. It's not just a statute of limitations. It's the only claim he has, the only claim. He has no other claim. But because of the statute of limitations, you said earlier that if he had brought the case two years earlier, you would have had the CLRA and you would have had the equivalent because of your footnote 25. We would have made different arguments in the district court, and then we would be in a different situation on this appeal. But we don't have to raise those arguments because we have a very clear statute of limitations reason why this case did not present Mr. Albright with an adequate remedy at law. If a judge had dismissed the matter without prejudice, it would allow you to pursue the matter to the extent that remedy exists in the state court. Wouldn't that take care of the matter? It would. I'm not sure that's the correct result, though. I think the correct result is by looking at the Cortez decision and deciding that this court did have jurisdiction because there wasn't an adequate remedy at law. Now, either way, this court could decide it either way. Albright's position at the end of the day is that he just wants to have his day in court wherever it is. But I think the correct decision here for this court is to look at Cortez, to say the California Supreme Court has a decision about how we apply this law. The plaintiffs have presented the court with a reason why there is no adequate remedy at law, and so this case is distinct from Sonner. And therefore, there is equitable jurisdiction, and we remand, and the case shouldn't have been dismissed. But if the court decides that this is outside the limits of equitable jurisdiction, irrespective of that, and notes that the Supreme Court of California would have treated it differently, a dismissal without prejudice would allow Albright to proceed with his claims, and that would be fine. I don't think that's the right result, but I think it's an acceptable result, and it's one that this court could reach. So I'd like to reserve the remainder. I'll make sure you have time for rebuttal. I have one question for you on that last point you just touched on. Yes. Weren't you required in some way to go back to the district court and ask for the judgment to be amended so that it would be the, I don't know, dismissal without prejudice seems like a strange notation to make in a ruling in which the court is granting the opposite, the opposing party a motion for summary judgment. But in any event, you just never said anything about this point in the district court, and I'm wondering why we're supposed to address it for the first time now in appeal. Well, it's a good point, Your Honor. Could we have gone and requested reconsideration? Yes, we could have. We didn't have to. There was a final judgment. It was subject to an appeal, and here we are. You know, I understand Your Honor's trepidation about ruling on an issue like this that wasn't raised, but jurisdictional issues can be raised post-judgment and can't be waived. And so I think it's a proper appeal, though we could have done it differently. And in retrospect, maybe we should have, but I don't think that that precludes this court from issuing the order that we're requesting. Well, I guess I'm just not even clear on, if we don't address it, what that means. You could always just go refile this claim in state court, and then the lawyers would make the arguments in the state court, as typically happens in, you know, when issues of claim preclusion and the like are raised, and the state court would make a call on that. You just want us to give, I guess, kind of an advisory opinion that in the event that you all return to state court, here's our view on what the effect of the court's granting of summary judgment was in this setting. I don't agree with that. I think we would be precluded from filing in state court without getting sanctioned because there's a final judgment, and they would have a res judicata argument that these issues were already decided, and that would preclude us on different legal grounds than what this appeal is about. So I think we have to try and reverse that judgment in some fashion. Well, it seems to me that the result you're suggesting requires a court to vacate the summary judgment on the basis that there was no jurisdiction, and therefore it never should have reached the merits. And if there is no jurisdiction, the matter is dismissed, and you're left to your own devices, whatever they may be. Yeah, I agree. That's exactly what would happen. Is that right? So I thought you were asking for the summary judgment to stay in place, but for this particular UCL part of it to be without prejudice instead of with prejudice. The only claim that Albright has is a UCL claim, and so the judgment would have to be vacated for Albright's claims, and the ruling would have to be amended to be without prejudice. And Polaris technically didn't move for a dismissal without prejudice or move for judgment on the pleadings as it, in our view, should have more properly done. I don't understand what would have to be vacated. So I understand that you think the actual judgment should be revised to say without prejudice, but what do you think needs to be vacated? The judgment needs to be. But the reasoning is the same. So there's going to be this reasoning that says we don't have equitable jurisdiction to give this relief, right? That's the reasoning. That stays in place, right? That could stay in place. I think I don't agree that it's correct for the reasons I stated before, but that could be left in place, and this court could say the judgment is vacated, the summary judgment order is revised to be without prejudice as to Albright's UCL claim. And so you're basically asking us to look at that reasoning and say the effect of this is to be a without prejudice. Why couldn't you make that argument in state court that, like, what the district court meant here had to be essentially a without prejudice type of ruling because what it said was about jurisdiction? Because Polaris will argue that we filed our lawsuit in bad faith and will argue that there should be a dismissal on separate grounds than the grounds that they moved for. They will have a different argument. If the order isn't revised, then Polaris will not only be able to argue that there's an adequate remedy of law and argue in contravention of Cortez that Albright should be prevented from bringing it, but it will also say, and we spent all this money getting this judgment, and now the plaintiffs are still pursuing this lawsuit, and there's collateral estoppel and res judicata, and so they should be separately dismissed on those grounds as well. And that creates a different legal standard for us to have to challenge as the plaintiff and heightens our burden. Okay. We've taken you over your time, but I'll give you a couple minutes for rebuttal. Let's hear from counsel for the defendant. Good morning and may it please the court. I'm Rick Godfrey. I represent Polaris. I would like to approach the argument in the order that counsel did, with one exception, because it was a non-serious question, Your Honor. It asked about Sonner and about why they didn't ask for the relief below the waiver. The district court judge gave a tentative before the oral argument. They knew what the tentative said. It didn't change. He added a few points, but it didn't change. Most of what they argue here, not just on the jurisdictional points, but on the merits of Bisman, are all new arguments in the court of appeals. They were not made below. Did the tentative say with prejudice? Good question. I think I have it here, but I don't know. I don't have the tentative here. I don't recall whether it did, but we moved for summary judgment. We asked for summary judgment, which is always with prejudice. Summary judgment is not granted without prejudice, so we got summary judgment. So I don't recall whether the tentative said with prejudice or not. But if the court had no jurisdiction, no equitable jurisdiction, how could it enter summary judgment? It had no power to enter summary judgment if it had no jurisdiction. That's a mistaken premise, Your Honor. The court had a subject matter of jurisdiction. The Supreme Court has said that equitable jurisdiction is often misused. It does not go to the power of court. It goes to whether or not the elements to obtain equitable relief are sustained. Your Honor has been on the district court bench for a quarter century or so. When I was a young lawyer, I spent most of my time going out arguing TROs and preliminary injunction hearings and then trials. And every court in the country routinely, subject matter of jurisdiction, inadequate remedy of law, maybe you get injunctive relief, but if there's an inadequate remedy of law, it's over. And they don't say, oh, I don't have jurisdiction to enter a judgment that there's no, because I don't have equitable jurisdiction, I can't enter a judgment on the preliminary injunction claim. They enter a judgment, and then it gets appealed. This is standard fare in this country. But the point is here, which I want to start there, it was waived. They never raised it until now. Like most of the arguments here, they never raised it until now. So now if we could revert to the beginning, which is Guzman. So Mr. Guzman testified. Can I just unback for a second? Yes. I mean, if they had raised it, what would you have done differently? Well, we would have briefed it, but it would have been the same result. What we would have said was, you have subject matter of jurisdiction. They have failed to meet the requirements to obtain equitable relief. Therefore, judgment on the merits, because that's what happens routinely. But why should that judgment bar an equitable claim in state court? Because, well, you're arguing now the Guthrie exception. The judge works in attempting to create in the Guthrie case, which was cited for the first time in a reply brief. But the reality is they chose the federal court. The federal court, under several Supreme Court decisions, says that states do not determine what the contours are of whether a federal court has equitable relief or not, and that's the end of it. But usually when the federal court has no jurisdiction, the dismissal is without prejudice with the idea that a state court or international court or some other court might have jurisdiction, and there's no reason if we didn't have jurisdiction to reach the actual merits because of some limit on what we can do, you don't get barred from trying somewhere else. The federal court had jurisdiction, though. Well, subject matter of jurisdiction, but no equitable jurisdiction to grant this remedy. So why shouldn't they be allowed to? That's an artificial distinction that the law does not recognize. The law does not say that if you have a lack of equitable jurisdiction, that means you can't enter jurisdiction on the merits. This is unroutinely cited in cases that are brief, including under the UCL. But there's no merits judgment that equitable relief would be inappropriate for a reason other than a limit that only applies in federal court. Well, this goes back to your hypothetical. If they had brought the – if I'm understanding the question correctly, if they had brought the claim within two years, so they had a CLRA claim and you had a UCLA claim, the federal court would say you had an adequate remedy in law. You had an adequate remedy in law, therefore there's no – Right, and that's the reason the court dismissed – granted judgment, dismissed, whatever. The reason the equitable claim failed is because in federal court, you can't pursue equity if you have an adequate remedy in law. But we don't know if that's a limit in state court. That's not clear that it is. So why shouldn't he be able to try this claim in state court? Well, aside from his waiver, the authorities up to now, except for Guthrie, the authorities up to now have held that federal courts enter merits on the judgment. They not – enter judgment on the merits. Well, can you point to any case that did exactly this and said we're barring you from pursuing this in state court because we didn't have equitable jurisdiction? No, the first time this has arisen is Guthrie. Judge O'Rourke describes this as a novel question. I don't think it's novel. There are cases like the Gibson case, which besides etc., the judgment was with prejudice on the merits. The first time anyone has created this issue came out of the Guthrie case, which Lopez disagreed with and Nasseri disagreed with, which Judge O'Rourke attempts to distinguish. I will confess I have, I think, the same discomfort that Judge Freeland is expressing to you, that if you're right on the Sonner point, that's how I look at it, because Sonner, it seems to me, pretty much controls on this issue, and it's fortunate for you. I'm not sure Sonner's right, but we're bound by it. But if it's right, and if it's the case, that in California state courts, they're not bothered by this adequate remedy of law thing at all, and they're perfectly happy to entertain, you know, simultaneous, concurrent UCO and CLRA claims. And then in that scenario, I just don't. I'm already uncomfortable following Sonner, given the incentives for foreign shopping that it gives rise to, right? But if you're entitled to prevail on that point, I just don't see how you could then insist that no, no, and the judgment of dismissal is with prejudice such that they can't even go to the state courts. So help me understand why. Okay, so first let's set aside the waiver issue. Well, let's just park the waiver issue, because that's a big problem here. And one of the cases that Judge O'Rourke cites, called Acama, they made a similar argument, and the panel in this court said, well, how do you get to that, because they waive it. So that's a big issue. Secondly, there are cases that have held on the merits. Lack of adequate remedy of law is not established. Therefore, judgment on the merits with prejudice, okay? So then we get to your level of discomfort. So now you're going to create a massive exception and essentially overrule CAFA, because my client has the absolute right under CAFA to remove. This is not a removable case. Now, Judge O'Rourke, in the Guthrie decision, the last side of the reply brief, created this issue for removed cases. But isn't one of the parts of CAFA that you can't remove if there's no federal jurisdiction over the claim? I mean, that claim then can't be. . . There's got to be some way, if there's a claim that can only be litigated in state court, that CAFA doesn't mean it's gone. Well, but there's the problem. There's federal jurisdiction. Equitable jurisdiction is simply a way of categorizing whether or not the plaintiff can establish the requirements for obtaining equitable relief in federal court. But there is subject matter jurisdiction, and there is the power of the court to enter judgment. But so it's your position that if there's an equitable claim that could be viable in state court. . . I mean, this happens to have been filed in federal court in the first place, but let's imagine the case where it's filed in state court. They're pursuing equitable claims that are viable in state court. Now, do you think CAFA means you can remove it to federal court and kill those claims permanently? I know CAFA means I can remove it. There's no exception in CAFA. And so what case says that, though, exactly? That these equitable claims are not. . . That doesn't work in the Guthrie attempt. Yeah, but that's a district court case, so here we are. There's no opinion that I'm aware of that has faced this issue in this way. Now, there is an opinion that I recommend that you consider, at least, called Cement Masons. It's not cited in the briefs, but because they cited Guthrie for the first time in the reply brief, we took a look to see if there's any decisions of this court where someone has determined that a plaintiff cannot establish the equitable elements of a claim, and whether that means dismissively prejudicial without traditional demerits. You gave us the background of Cement Masons. Yes, Cement Masons is a case involving ERISA, and they concluded that there is no basis for equitable relief, and it was dismissed with prejudice. And the citation is 197 F. 3rd, 1003, 1999. It's my analogy, so it's not. . . I don't want to mislead the court. It's not a state case in the same sense, but it's a close analogy. And in our view, it's a good illustration of, they're the masters of where they file suit. So the issue that you're phrasing about someone who filed suit, and this is why Judge Orrick was very careful in the Guthrie case to cabinet to remove cases, that they're the masters of where they file suit. They file suit in federal court. And the consequences are they submitted themselves to the subject matter jurisdiction of the court. We could have removed it. I happen to think Guthrie's wrong when he signed it, but it's neither here nor then, so it's not before you, this panel. And the issue then becomes, do they get two bites at the end? I'm not even sure, actually, what they're asking for, though, in this appeal, and I think you were getting toward that at the end of your question. Do they want the court to remand it and say it's got to be without prejudice? Do they want the court to dismiss it or remand it to the state court, and then what's the basis for that because under CAFA I have a right to remove? But the fact of the matter is, under the precedence as they exist, and there are cases we cite in my brief where the dismissal was with prejudice on the merits, and we cite cases involving differential statute limitations, the Alvarado case and the Misch v. T4 street case. And the effect of that would be to bar this action in the state court if they began a new action? Yes, that would be the effect of it. That is precisely the effect of it. And I think there's a question about if they had brought the claim here originally within the two years, which they didn't do. But I wanted to answer your first question first and see what kind of side track that was. As long as we're on what I call the sonar laboratory, let's finish that up. If the court has any other questions on that. I don't want to short-circuit this argument. On your waiver, so often when we consider waiver, one of the things we think about is was the other side prejudiced by it being raised only on appeal instead of in the district court. And I haven't really heard you give a reason why you were prejudiced by this. It seems like we have the discretion to consider this issue because you were prejudiced, or can you explain some reason why they really needed to raise this below? Sure. Number one, we would have briefed it. But you have briefed it now. We've briefed it now, but we would have developed a more robust record here. What would the record be, though, about whether this was justified? You didn't do anything about the tentative. Here were the choices you made. I mean, you have a truncated version here. For example, if the Guthrie case had come down, we would have briefed all of that. So there's an expense element. You know, they're getting to do this twice, they're getting two bites of the apple. There's also a judicial element. Let's face it, there's prejudice not just to the parties. Because now I'm faced with if you remanded some elements in the state court, we're going to argue planned preclusion, we're going to argue the hazard bias, and we'll make all the arguments that counsel foreshadowed. And whether the state court agrees or not, it will depend because there's a case called Sondra 2. I'm sure you're aware of it. It's being argued on May 23rd, and that may have some bearing on this. I won't predict one way or the other, but there are some overlapping issues potentially here. Potentially. But then there's also the district court. So the district court judge spent time with the district court going through all this, worked very hard, wrote a very thorough opinion, had an oral argument that lasted, you know, a good length of oral argument, full briefing. And the district court is supposed to do what? Now do it all again? There's no pressure. Well, no, but if we agree with you on the statute of limitations issue and say it is true that they can't revive the claim by being late on the other claim, so you're right that the federal court can't grant an equitable remedy. Let's leave all that in place. What is the big inefficiency of changing it to without prejudice so they can go to state court? Because we're going to have to brief it again. We're going to have the same argument. Well, first of all, the first argument is going to be we're going to remove it. And so we're going to brief it. Well, they're not going to remove it. We have CAFA. But that would all be true even if it had been argued in the district court. I don't understand the difference between you're saying they should have argued this in the district court, but you would have briefed it there, now you've briefed it here, you're making the argument now instead of there. What's the difference? Well, it's another round of briefing, it's another round of expense, and it's now in two courts, not one. But the prejudice can't be that it's more difficult to do it now than it was to do it then. I mean, prejudice means your legal position has been adversely affected. What is the effect of that legal position? You have the same position, as I see it now, that before you briefed it or re-briefed it or will future brief it, it will still be the same legal position. Your point, but I disagree with that inclusion, which is the legal position is we think it's on the merits. We think Albright's claim is invalid on the merits. But we'd have to start all over again with making different arguments in the state court if we can't remove it. So now we have to remove it. So as I understand it, did I ask you maybe if you could say something about the sham affidavit issue? Absolutely. What's your position on that? Well, first of all, the affidavit is entitled Affidavit in Support of Class Certification. Okay? It was never argued in their briefing below, even after the tentative came out. It came up in a half a page during the oral argument for the first time. And I said it's an improper affidavit because the generic statement I saw on Reddit is not specific enough. It's compared to the deposition where he said, no, I didn't read it. I just saw two words, OSHA and Polaris, which in his mind meant OSHA approved, which, of course, those are completely different. Because when he's asked what OSHA approved meant, he said, oh, they approved the whole vehicle. And when asked at deposition, what's wrong with the ROPS? Oh, I don't know. My lawyer told me that they were the problem. Okay? This is a lawyer-generated, as far as he was concerned, problem. Because he can't tell you what's wrong with the ROPS. So then you get to the declaration. I said in response, because I was surprised it was being raised for the first time, well, that's the same thing that happened to Judge Koh in the iPhones application case. And she looked at it and said, I'm not paying attention to the declaration, and here's why. And she rejected it. So you are correct that there was no formal objection filed because it wasn't part of the briefing. Again, it was one of these waived arguments that's just made up late. I don't know what happened in the class action briefing that was referenced earlier in the argument. But was this declaration relied upon in the class action part of the briefing? And had you already responded to that? Did you object to it in that briefing? Well, they argued that we didn't object in the class action. I don't know the answer to that. The class action briefing was separated. So the briefing was simultaneously. The court indicated, I want to hear summary judgment first because I want to get to class certification if there's no validity. I don't know the answer to Your Honor's question. I do know that we argued that the declaration did not change our argument. Summary judgment was the declaration didn't change the deposition testimony. The deposition testimony was specific. The declaration was generic. And it is word-for-word identical, word-for-word identical to Mr. Albright's declaration. Well, let me ask you, as a matter of procedure, then, what can this court do about that issue? Did the district court impliedly or expressly ruled on it? And can this court now look at the affidavit, look at the testimony and find it that is a sham affidavit? Or does it have to remand to the district court for further determination of whether or not it's a sham affidavit? The district court, first, this court does not have to remand anything on this question. The district court, this court can look at what the district court did, which was implicitly rejected because it went with the deposition testimony. But even if you match the deposition testimony against the declaration, the declaration says, I saw on Reddit. One can say that's not inconsistent with what he testified to is what he saw on Reddit. He said he saw a sticker or a label. He saw the word Polaris. He saw the word OSHA. That's all he saw. He did not see the allegedly offending language. So I can even argue that it's not inconsistent. But it is a sham declaration because he then, look, and I do trial work in appellate work. He didn't file a Reddit sheet. So we have the deposition is taken. No Reddit sheet is filed. An identical declaration for both Mr. Grissman and Albright, word for word, are filed in support of class certification. The first time it comes up is in the oral argument. Seminary lies in the oral argument. I respond by citing Judge Koh's opinion. I phone applications and say, look, number one, it's improper. It does not contradict the deposition testimony count or the deposition testimony. Number two, it's a sham. And there's a number of cases it's a sham. Did the district court address the declaration at all in its order? No. The district court simply went with the deposition testimony. And that's because it came up, I mean, literally, this was like almost an afterthought that came up in the oral argument. It was just another argument that was being tossed out. So we think it's a sham, one, because it didn't relap on it for summary judgment except this brief mention of oral argument. We think it's because it got generic language that does not contradict the precise language of the deposition admissions. We think that the lie is you don't need the district court to do something which is obvious. The district court implicitly rejected it. Couldn't we only reach this issue if we think it would be an abuse of discretion to not call it a sham? No. You could reach it. Let me think about your question. So say the district court had said, I don't think this is a sham. I think when someone who's not that educated sees OSHA, they think it's OSHA approved. That's close enough to what they said in the declaration. It's really not that different. I don't think this is a sham. It's reconcilable. So if the district court had said that, would we be able to say that's an abuse of discretion? Yes, because you look at the deposition testimony and say, I don't see how to get there. And is that the same standard we would need to apply now to avoid a remand? I think yes. I think you'd have to say the district court abused its discretion by not paying attention to the six lies in the oral argument and the declaration that was submitted in support of class certification. Otherwise, we'd go back to the district court. The district court, I won't speak for the district court, but I find it hard to believe a lot of the opinion the district court wrote, that the district court would find that the declaration overcomes the deposition admissions. The deposition admissions were as good. I mean, the district court may agree with you about that, but I'm having trouble seeing how we could say that the district court had to do that. Because to me, it's possible to read the idea that, oh, I thought it was OSHA, I thought it was safe, and then later says I read it more. I'm not sure it's so irreconcilable that you'd have to. The deposition admissions are too precise. You can't tell you what's wrong with it. The only thing he knows what's wrong with it is what a lawyer told him was wrong. Well, that's kind of a different thing than whether he read it, though. He says he didn't read it. I mean, he says he read it enough to understand that it was OSHA, that it was something about OSHA approved, and so then later he says he read it and understood it was a regulation. But people wouldn't generally understand what this regulation is, right? The law is very clear, and there's a lot of cases from this court and other courts that you have to show actual reliance, and you have to see if you allegedly see and read the offending language, the allegedly offending language. You didn't read that. Seeing the word OSHA in Polaris, there's nothing offending. And you can't find reliance or a cause of action based upon what some individual thinks it means or doesn't mean. Well, let me stop you on that point, because let's assume that you're right on the declaration. We just have to ignore that and focus just on the deposition. And you're looking at this passage on, I think, a DR 2037, if I'm remembering right. That's where he says, was it you who asked him, did you actually read the name of the thing? I actually didn't read it. I just saw the words. Okay, so let's take that as a given, that he's not going to be able to get out from under that. Why on a causation-related inquiry is that not enough? Because I would understand what you're saying if, for example, he says, well, I saw the word OSHA, and I assume that it meant OSHA regulatory standards or it was OSHA approved. And, in fact, what the thing says is, warning, this product does not meet OSHA standards. And, okay, well, obviously you didn't rely on anything he said. But his understanding of what was trying to be conveyed is consistent with what your client was trying to convey. And what he does very clearly say is, if I hadn't seen that sticker, I wouldn't have bought this thing. So from a causation standpoint, I don't see why he's there. It doesn't work. Help me understand that. Well, first of all, he only believes it's false because his lawyer told him. All right? He didn't, at the time, think it was false. At that time, it was. Secondly, I realize you're asking a different question. I apologize. There's a line of authority that says, individual purchasers' mistaken understanding or assumptions that are not in the language of the label or sticker do not count. They do not justify. And what I'm positing is that he does not have a mistaken assumption. It's not as though what your warning label said was, this product does not comply with OSHA. It is trying to convey, if you read the whole thing and when you looked up the regulation, it is trying to convey a positive association between the safety of the product and its compliance with some OSHA standard. He's saying, that's what I assumed. Now, maybe I made that assumption without reading every word, but I nonetheless drew the very assumption that your client wanted him to draw. Right? But then you can't explain the long line of authority from this court and other courts that hold to the contrary. That's why you have to see and read the allegedly offending language. You can't base it upon your understanding or guesswork. Well, I do understand the cases where, you know, if there's some representation on the front and what you're saying, I realize. That's the two cases. Hang on. Let me finish my question. You've been quite active in interrupting all of us. I apologize. Let me just speed up my question. Sir, I understand the case where, you know, you say, wow, I read something on the front, and actually the representation you're trying to sue on is on the back, and, well, yeah, I never got around to it. Okay, well, no, you're not going to win that case. But he's saying he saw the thing that he's suing about the sticker. He's just saying, oh, I only saw components of it. But the things he pieced together from the components are consistent, actually. That's why I was just challenging you when you said you made a mistaken assumption. I don't think his assumption was mistaken. So if it wasn't mistaken, then help me understand why the causation theory doesn't work. Well, the authorities up to now, as I understand them, are that you have to actually see and read the allegedly offending language. And the assumptions, his assumption was that OSHA approved the vehicle, didn't make anything about the ROPs. Albright's assumption was that the numbers that were listed, the regulation. Well, in other places in the deposition, he talks about the ROPs. He talks about it would be safe for October and stuff. So he is, if you put it all together and we read it in his favor, he knows it's about the ROPs. He didn't see and read the offending language. I think that's what the law requires. Now, this allows you to then say, so let's play this out. He saw the word Polaris. Clearly, that does not convey anything, right? I think we can all agree on that. So he sees the word OSHA. That's all he sees. And from that, he has a cause of action that is the cause of action based here because he assumed that seeing the word OSHA meant that the ROPs were certified to be in compliance with OSHA. It seems a bit of a stretch. Basically, it eliminates the causation and reliance requirement. It says you don't have to actually see and read the language. And understanding incorrectly on his part that it was OSHA approved for the whole vehicle. Is there any other part of the vehicle that's OSHA approved? Well, OSHA didn't approve any part of the vehicle. Okay, well, is there any other part of the vehicle that's regulated by OSHA? No part of the vehicle is regulated by OSHA. These are voluntary standards that were adopted. Okay, are there any other parts of the vehicle that are subject to voluntary OSHA standards? No. This is the only part. Does that answer the question? Yeah. The reason I was pushing back a little bit is counsel of the briefs have said these are mandatory government standards and these were voluntary to adopt. But the point is, someone who sees the sticker and does read the whole thing, no one is going to know what this regulatory thing says. So, basically, reading the whole thing or reading the parts he read and getting the impression, they have the same effect. Somebody reads the whole thing is going to have the idea that this part of the car with the sticker is somehow compliant with OSHA, and that's what he gleaned from it. So, it's a little hard to understand how there's a difference. Well, there's a difference because we're stipulating do not read the allegedly offended language that the ROPS were in compliance with OSHA standard 1928.53. So, we just saw the word OSHA. So, the premise of the question or hypothetical is, is seeing the word OSHA on a label on a vehicle sufficient to establish both reliance and causation? We think under the authorities it's not. But that's the premise of the question. And the implications of that would be, let's say it wasn't a case about the rollover of protection, but it was a case about the tires, the same argument. Well, I thought it said OSHA, therefore the tires were approved. It would be the same. But if the sticker was on the tire, I mean, maybe that would be reasonable. That would be an argument that someone would make. Let's see what they say at that position. I don't accept it. I mean, unlike the juice cases, which I think the honor was referring to, you had pictures of the fruits on the front, and then they had, if you will, a disclaimer on the back. We don't have that here. We have a guy who claims he didn't read it. He saw two words open. I think we can agree Polaris doesn't move a needle on this discussion we're having. And so then the question is that having the word OSHA on the sticker fundamentally changed and established that it's a jury question for the jury to determine whether or not he actually relied upon it, as compared to relying upon his lawyer, which is what he testified to. So, you know, I don't think the case law is consistent. I mean, you have cases like Brazil, Graham, a case of this court, in an iPhone application, Mabel v. Costco, and Merkin v. Wasserman of the California Supreme Court. I don't think you can square those five decisions, which I just read, with the hypotheticals that we're batting back and forth. Okay. Judge Urbano, do you have any further questions? No, nothing further. Thank you. Okay. Thank you very much for your time, and we would ask the court respectfully to affirm the judgment below. So thank you very much. Thank you very much. Let's put two minutes on the clock for a moment, please. Thank you, Your Honor. I'll be very quick. The trepidation that you expressed, Judge Watt, about extending some of the facts here and precluding a plaintiff from bringing their claims entirely is a big problem. It's an irreconcilable problem, because what defense counsel just said is that if a case is brought in federal court, then that case can't get to the merits if there's no equitable jurisdiction, even if they have a very good case. And that's a different result than what the California Supreme Court said. And so I would say that there is no way that this court can affirm the judgment against Albright without holding that the California Supreme Court's view of the UCL doesn't matter and that people can't bring claims, and too bad. And that would be a complete travesty of justice, in my opinion. Now, with respect to Guzman, I think we got to the heart of the issue. Judge Friedland and Judge Watt, if you both get it, I'll go real quickly on this. Guzman testified at Excerpt of Record 1802 when he was asked by defense counsel, is there any specific federal standard for safety you're referring to in the complaint? He said, yes, I'm assuming it would be for the cage that is strong enough to hold itself if anything did happen. Guzman understood that this sticker, which said that there was OSHA compliance, which was located on the rocks, meant that the rocks met OSHA requirements. That's all he needs to understand for purposes of reliance because it's the causal mechanism of fraud. That's it. And as to your honors question about whether the class certification briefing relied upon Guzman's declaration, it did. The excerpt of record numbers is 4084 to 4085. There was no objection to his declaration on the class certification briefing, and that briefing was before the court contemporaneously. I would submit that this case should be remanded and reversed in full. Thank you. Okay. Thank you very much for your argument. The case just argued is submitted, and that concludes our argument session for this morning. The court is adjourned. Thank you, your honors.
judges: WATFORD, FRIEDLAND, Robreno